Case No. 241138 Good afternoon, Your Honors, please the court. My name is Nolan Negreanu with Wild, Gottschall & Manges on behalf of the appellants, plaintiffs and the proposed intervenors. There are two orders on appeal. I'd like to start with the district court's order denying the motion to intervene. This is a substitution case that the district court erroneously treated as a mootness exception case. The district court held that when the named plaintiff for the injunctive relief class, David Crespo, died, that the class claims were mooted along with his claim. The district court therefore denied the motion to intervene because the class action had become, quote, nonexistent. This is an error in contradiction. And Judge Klein prevents that. Klein, as well as a series of other cases, said about this Court. This is an error in contradiction with the law of this Court, out of step with the district court cases on the same issue. And this Court has held on multiple occasions and recently in Klein that if a named plaintiff's claim is mooted, the Court can and should consider substitution of a named plaintiff rather than dismiss the entire class claim as moot. And a class claim does not become nonexistent the instant that a named plaintiff's claim is mooted. So what should Judge Corman have done? Judge Corman should have considered the substantive intervention motion rather than determine that he couldn't because the class claim had been mooted the instant that David Crespo passed away. He didn't. Were you or your firm responsible for drafting the original complaint? Our firm was. I personally wasn't. No, I understand. This is pro bono of some sort, right? Yes, pro bono. You're not usually in the business of representing plaintiffs of this sort. It's a different part of our business, me personally. But yes, I take your point. Yes, so in the process of drafting such a complaint, wouldn't the possibility of some sort of problem of this sort come up rather naturally? Wouldn't one take the precaution of including as many possible members of this class who could carry the ball? Certainly. I mean, you would like to do that. Some context for why Mr. Crespo was the only injunctive relief named plaintiff. The process of putting this complaint together takes a long time. These people are incarcerated. It's not the most seamless thing to talk to them and interview them. And it requires multiple interviews, visits, phone calls, all of which have to be scheduled and go through defendants. This increases the amount of time that it takes to evaluate people. And obviously, you have to start from a much larger population before you get to people who are suitable named plaintiffs. By the time we filed the initial complaint, I believe that David Crespo was the only person who was still incarcerated. So he was the only suitable injunctive relief named plaintiff. These are very transitory. Well, they're very limited as inmates. The period of time that they're there is pretty limited, right? Quite limited, which is why they're. I'm sorry. I was going to say, which is why there are prophylactic mootness rules that deal with that issue explicitly. But that is not what we were arguing David Crespo benefited from after he had passed away. But both of the proposed interveners are now both out of jail, too, right? They are out now. But they filed their motion to intervene at the time they were still incarcerated. And their standing is determined as of the date of the motion to intervene. But then won't Judge Corman have to deal with the fact that they're out now? If their standing is determined as of the date of the motion to intervene, which was filed when they were both still incarcerated, they would then benefit from a well-established exception to mootness because their claims evade review. That is from Amador V. Andrews of this court. This has already occurred earlier in this case when Mr. Crespo was out. Defendants argued that his claim was mooted by his release. I get that. But it's the same situation. Is there a difference between the mootness caused by death and mootness caused by someone no longer being in jail? In this case, there is. If the plaintiffs are released, that is the evasive condition. And they benefit from an exception to mootness. And whereas Mr. Crespo's death, which was not related to the subject matter of the complaint, we never thought or argued that he benefited from a durable exception to mootness. In any event, your real argument, just procedurally, is that this should go back to Judge Corman to make that determination. Right? Or do you want us to decide? We've argued that this court should decide the substantive intervention motion. And we think it's completely equipped to the magistrate's. So you're telling me that it's not more prudent to send this back to Judge Corman to decide the intervention, given the fact that the two other punitive plaintiffs, who are, well, the two would-be interveners, are no longer in prison? Is that what you're asking? The fact that they're no longer in prison has nothing to do with the merits of their intervention argument. I understand that you are relying on capable of repetition yet evading review, right? That's right. That's the rationale. I'm asking, why would we want to deal with that when you want us to assign error to a district court judge that he should have, instead of saying it's moot and I'm not going to entertain the intervention motion, he should have entertained the intervention motion? Why not then just send it back? Why is that not the simple solution? Send it back so that he entertains the intervention motion. That would be fine with us. There's precedent in this court for doing so. I think there is clearly enough in the record to evaluate the intervention motion and send it back with guidance. It is crystal clear that it should be granted under both Rule 24 bases. But the fact is that the district court applied the wrong analysis. It construed what we were asking for as a durable exception to mootness when we were just asking it for an opportunity to intervene, which is what this court said should be uninclined in Swann. They mentioned it in Turkman, in Comer v. Cisneros. We, in arguing this below, we, several of the district court cases that we cited in our brief when they dealt with a situation like this where a named plaintiff's claim was mooted prior to class certification, well, by death or by anything? I mean, most of these cases are Rule 68 offers of judgment. That's right. So I'm just trying to figure out, are you saying that death is just like that, or is death different? Death is just like that. Death is like any basis for mootness that does not benefit from a durable exception, like evading review. In those cases, the court permitted an opportunity to intervene. And they said very clearly, rather than dismiss, this is an alternative to dismissal. It's not a durable exception. The court can and should permit an opportunity to substitute or intervene. Those cases also predicated some of the district court cases, not the cases of this court, predicated that holding on an evaluation of whether the plaintiff had a reasonable opportunity to move for class certification. So seeing as those district court cases had made that evaluation, seemed to think of it as a predicate, we made that argument below that Mr. Crespo had no such reasonable opportunity. But why not? This thing was kicking around for years at the point of his death, right? The case had been going on for a long time. What prevented a motion for class certification? The long and short of it is we had effectively no class discovery. Class discovery stayed early on. We sought it. But that constitutes the lack of a meaningful opportunity? I mean, most of the cases that everybody's citing are situations where the defendant is going to be able to make mischief and defeat the ability to ever review this by just offering a Rule 68 offer of judgment. That's not here. Here, tactical decisions were made by you and your client to kick this around, even engage in settlement discussions. But I mean, we're talking about years. So how is this like these other cases? I'll take it in turn. First of all, not all of these cases are the mootness was caused by the defendant. That wasn't the case in Swan. Swan was a 1980 case of the Second Circuit where the named plaintiff had died. In fact, Kline, also arguably not caused by the defendant. The defendant in that case was an insider group. And the mootness was caused by the sale of the company. There's no clear line that says this was caused by the defendant. In fact, this Court in Kline said that there is no skullduggery involved in this case. And they're referring to situations where, as you're alluding to, Your Honor, the defendant is causing the mootness. And on the discovery record in this case, the long and short of it is, at the beginning, defendant sought a stay of discovery. It was denied. However, the magistrate judge said, we're not going to be talking about class discovery at that stage. We continued to seek it. We filed a motion to compel. We subpoenaed the BOP. We tried to get a site visit. They gave us some discovery, but it was limited to our named plaintiffs. We didn't have class discovery. Once the motion to dismiss had been decided and the injunctive relief claims survived, we were negotiating a discovery schedule with the defendants. We had worked it out. They gave us their, we had set that we would file our motion for class certification three weeks after the end of all discovery. That included document discovery and expert discovery and depositions. And within two weeks after their very first document production, our named plaintiff died. At that point, we could not have moved for class certification. So at no point prior to his death did we have sufficient means to move for class certification. We were seeking it. It was ongoing. And the standard, again, of the district court cases that use this framework as a predicate for permitting substitution is that there was no undue delay. And the schedule aside, and defendants point out that that was not actually entered, even though the magistrate judge observed that we were apparently following it. You can't say that there was undue delay when we were operating under a schedule that we had both agreed to. And that we could have moved for class certification when we had virtually no information about the class. So you've taken up all your time on the intervention issue. I'm going to give you just a few minutes on the Bivens. You know what? I'll just take one minute on just the personal involvement aspect. And we can leave the Bivens aside. So our main point on, and just to be specific, the Bivens new context we'll leave aside. So our main point of personal involvement, and we appreciate that the allegations are from each of the plaintiffs to each of the defendants are not at the same level of detail and specificity. But the operative standard for deliberate indifference is that an official knew of, disregarded excessive risk to inmate health or safety, that they were aware of those facts from which the inference can be drawn, and he drew the inference. And what we what the complaint alleges is that defendants were told that corrections officers routinely deny access to necessary medical care, that they threatened class members with punishment, accusing them of faking their illnesses, and requests to obtain medical care are ignored, often for a period of weeks or months. That is the risk of which they are aware. And it manifests in ways that are described in the complaint, acute medical episodes that absolutely the plaintiffs do not allege that they were begging for treatment from defendants directly. They mentioned nurses and other unnamed medical. So mere awareness constitutes personal involvement? Awareness of a serious risk that they are demonstrably deliberately indifferent to, by the fact that it does not resolve, is the standard for deliberate indifference. So one of the allegations here is that these mainline meetings are sufficient. And so with respect to certain defendants, that's all they were there for. They're not the recipients of complaints or grievances. Your view is just being present at a mainline meeting at which inmates complain about certain conditions is enough to make them deliberately indifferent? The allegation in the complaint specifically is that they were told about a range of issues detailed in the range of paragraphs, 35 to, I don't have it exactly, the range exactly in front of me. But within that range includes the allegations I just described, that medical requests for medical care are ignored. Well, let's start with Gerard Travers. He attends mainline meetings where cadre air complaints about these various conditions. No indication of anything else he does. That, in your view, is sufficient to give him notice and to make him susceptible to an action based on deliberate indifference? To the extent that he is being told that the response to medical requests is ignoring them, is retaliation, and then nothing is done about it, yes. So anybody in that room who heard that is subject to a bivence claim? The allegation is that they were told about it, not that they're in the room. That they have, that they were told about this directly, that nothing was done. That goes back to my question. Mere awareness, you're telling me, you're telling us, constitutes a form of personal involvement that we have recognized for purposes of a deliberate indifference claim, for example. And mere awareness, by the way, of past events, is that personal involvement? Does that qualify as a type of personal involvement that we recognize? It's awareness of a risk, and then the risk manifests. And a good example of this situation is Farmer v. Brennan, or any failure to protect case. The risk that they're aware of is different than the manifestation of the harm. In a case where Farmer v. Brennan, where there's an inmate assault, is the ultimate culmination of the risk, there's going to be no situation there where, during the actual assault, the defendants are failing to address it. The point is that they were aware of a risk, they were deliberately indifferent to it, as evidenced by the fact that they did nothing about it, and then the risk manifests. But aren't the complaints about prior events, prior incidents of inadequate medical care, or is it ongoing? Now, to be clear what I mean by the risk, the risk is they're told, defendants are being told, this is what the MDC's medical system consists of, that there are serious allegations made constantly of medical care. Let me go back. That there are medical requests that are responded to with nothing, or threats. That's what they're being told about. It's part of their charge to make sure that medical requests are being responded to reasonably. You mentioned, obviously, a lot of farmer, but is there a Second Circuit case that I could look at? Because I've not seen one where a higher level, much higher level official at a prison facility is deemed to be personally involved by virtue only of the fact that they were made aware of a heightened risk of inadequate medical care through a complaint relating to past incidents of inadequate medical care. I don't have one specifically about the way you're describing a risk at this time. Well, I'm using your words.  Is there a case that's remotely like that? Not that I have for you right now. All right. Well, you deserve three minutes for rebuttal. That's right. Give me a little bit more time. And I understand that the argument from the government is split, is that correct? That's correct. Where's your friend? Oh, hi. OK. Good afternoon, Your Honor. Assistant United States Attorney Diana Mahoney of the US Attorney's Office in the Eastern District of New York, along with my colleague, AUSA Alexandra Magaris. I will be briefly addressing the court's inquiries with respect to the Bivens issues and deferring the remainder of my time to my colleague as to the injunctive relief claims. As noted, the district court's opinion as to the medical care Bivens claims asserted by plaintiffs, dismissing those claims for the lack of personal involvement required for a Bivens claim must be affirmed. And that is because, as the district court held, generalized statements as to awareness of medical conditions or care is not enough to satisfy the requisite personal involvement requirement under Bivens. In fact, the report and recommendation in this case went through a detailed and careful analysis, plaintiff by plaintiff, of the medical complaints and treatment at issue and tied that to any potential personal involvement, any knowledge, any direct treatment by any individual defendant and found none, Your Honors. It tied no wrongdoing to any individual defendant in this case. And that lack of personal involvement is indeed fatal to plaintiffs' Bivens claims. Let me ask you a question that's a hypothetical, but I just want to make sure, given the answer that your friend on the other side gave, that I fully understood the parameters of this personal involvement element. So if a high-level official from the MDC attended a meeting and was told that the nurses are not only not providing adequate medical care, but doing things and performing procedures that are actively, affirmatively harming inmates at the MDC, and that high-level official says, I don't really care, they can do whatever they want, just hypothetically, is that enough to determine that they are, conclude that they are personally involved in the provision of inadequate medical care? So not solely by virtue of the high level of position of authority. Perhaps with respect to gaining knowledge and then disregarding that knowledge repeatedly that contributes directly to an inmate's medical care. How about you add the element repeatedly? There's a meeting, and I'm told, I'm the high-level official, and I'm told that the nurses are torturing inmates, again, hypothetically. And I say, I don't care. They can do whatever they want. Does that constitute the type of personal involvement that would then, at least with respect to that element, provide some basis for liability? Respectfully, Your Honor, under those circumstances as you've presented, likely not. It would depend on the circumstances, but the generalized knowledge has been held in the right case that we cite in our papers, that an individual's generalized knowledge of conditions at an institution is not enough to satisfy that level of personal involvement. But my hypothetical adds, I don't care. They can do whatever they want. So is that enough? That may rise to the level, if it's explicitly disregarded and results in injury to an individual. And when you say explicitly disregarded, you mean I've got to verbalize that? Correct, and ignored, and no action was taken to rectify the situation. What's the difference, qualitatively, what's the difference between that, if you agree, and arguably just given, if we view the allegations in the light most favorable to the punitive plaintiffs here, what's the difference between this hypothetical and what they're describing, which is high-level officials are told all of these things are not being done, and inmates are being harmed, potentially. There's a significant risk of harm. And they listen to that and do nothing. Here, Your Honor, there is no evidence that individuals at the Metropolitan Detention Center were specifically informed of any of the medical conditions that are alleged in the complaint, or that they were told specifically of medical conditions or medical suffering by any individual inmate and disregarded that. Rather, the crux of the allegations, as laid out in the R&R, which was adopted by the district court, is just generalized knowledge of conditions generally at the Metropolitan Detention Center, and nothing specific as to a medical ailment or a medical complaint that was brought to the knowledge, as Your Honor's hypothetical proposed. There is no evidence of that here. So what you're relying on is lack of specificity. Lack of specificity and lack of a tie to an individual defendant in personal involvement in any constitutional violation here. Rather, awareness through a generalized mainline meeting, which occurs at the entrance to a unit, is not enough. Let me just go back then. So if the meeting had been very specific in the allegations of inadequate medical care, then you would say maybe that would be enough for finding that they were personally involved. It could, Your Honor. But again, that is not the circumstance here. There's no evidence. Yes, Your Honor. I'm just trying to figure out what the line is, because it seems to me, at least as I think about this, that there may be circumstances where, and I think you've now agreed, there may be circumstances where you, as a high-level official who's not involved, obviously, in the provision of medical care, you're in a meeting, you're told with great specificity or sufficient specificity, this is what's happening, and you do nothing, then you might be personally involved. That's correct, Your Honor. No such specificity. It's our position was alleged in this case. Assuming the court has no further inquiries with respect to the Bivens, I'll defer the remainder of my time to my colleague. Judge Bivens? No, I'm fine. Thank you. Good afternoon. My name is Alexandra McGarris, and I will be addressing the issues of mootness and the omission of Martha Crespo on the notice of appeal. The district court here properly dismissed the injunctive relief claims as moot after the only named plaintiff in the uncertified injunctive relief class, Mr. David Crespo, died. In the class action context, if the claims of the named plaintiff become moot prior to class certification, the entire action becomes moot. So I agree. I agreed with you inclined, and then I lost to persons of my left and to just Pooler. And I'm an institutionalist, so I go with the majority opinion. How is this really fundamentally different from Klein? Well, I have good news. I think I could tie it between two of them. There's no disagreement. Klein case involved a Rule 17 motion to substitute, where the shareholder brought the suit in derivative capacity. There was a disagreement between the judges. Lost her ownership share. And the company then decided to seek substitution as the real party in interest. And that's apples and oranges here, where we don't have a certified class. The unnamed members of the putative class are not a real party in interest. And this is not a motion for substitution. Rather, it was a motion for intervention. So legally, really, what's the difference? I mean, that's the problem. So there's a lot going on in Klein, I agree with you. But the bigger idea is, how do we determine when a case is moot, when there are multiple parties who could substitute, intervene, however you want to describe it? That is the issue. And I think what we said in Klein, what Klein says, I'll put it that way, is that, look, the fact that a particular plaintiff dies or is no longer has standing to proceed to that plaintiff's case might be moot doesn't totally divest the district court of jurisdiction to consider the possibility that another plaintiff may come in. Is that wrong or right? Conceptually, with respect to the Rule 17 motion there. But here, Judge Corman did consider whether or not there was an appropriate exception to the mootness doctrine. And this court has recognized several narrow exceptions. Here, the plaintiffs seek to expand that exception to cover situations where the named plaintiff didn't even move to certify, and where no concerns that have motivated this court in the past to recognize an exception are present. And those concerns fall into three buckets loosely. One, addressed by Your Honor, relates to where the defendant takes action to pick off plaintiffs to avoid the clash action. Also, where the claims are inherently transitory, or where the mooting event is, I think the court used, is close to the essence of the complaint. None of those are present here. Why are these inherently transitory claims? Your Honor, in the cases that have considered that in the context of prisoners, as opposed to pre-sentenced defendants, here we're talking about post-sentenced individuals that have not found to be inherently transitory. These sentences were four years. Did Judge Corman make that determination, that that exception didn't apply, the inherently transitory exception? Judge Corman considered it more from the, is it possible of repetition, yet evading review. And looked more as whether death is kind of related to the claim at issue, and found that it was not, and didn't go on to the next step to consider kind of how short the claim should have been. So he did not, okay. That's correct. Plaintiff here also doesn't argue that it does constitute an exception under the inherently transitory exception also. Well, I mean, I guess what's your friend on the other side is saying is that this was a, you know, a discovery schedule that everybody agreed to, and so that should redound to his benefit. In other words, couldn't really, as a practical matter, Mr. Crespo couldn't make a class certification motion because decisions made by the court and the parties put that off. And so I guess what's the response to that? That doesn't matter. That the parties proposed an outside deadline for when plaintiff can seek certification is not only not dispositive, it's not relevant. The test is whether, to the extent we seek and acknowledge an exception for where, you know, steps were taken to certify the class, the test is whether there was a reasonable opportunity, not optimal opportunity, not final opportunity. The proposed dates in the proposed scheduling order were outside deadlines. And scheduling orders are amended routinely to accommodate changed circumstances. This proposed scheduling order was discussed between the parties three months before the government knew that Mr. Crespo was gravely ill. Government was not in a position to know anything about Mr. Crespo's health. Plaintiff was in the best position to assess their litigation strategy and reassess it as his health deteriorated. They could have taken steps to preserve their claims. They did not. And there's multiple opportunities during the course of the four years between the filing of the lawsuit and Mr. Crespo's death, where not only plaintiff could have filed for certification, but should have. And I point this court to two critical inflection points. The first was when Mr. Crespo was released from the MDC in February of 2019. At the time, the government's motion to dismiss was pending. And in that motion, the government argued that any named plaintiffs in the injunctive relief, that their claims should be moot if they're released from prison. The district court didn't rule on that for 21 months. During those 21 months, plaintiff could have and should have taken steps to preserve their claims. And the second inflection point- By what? How? Could have sought certification. So the subclass that we're talking about here, an injunctive relief subclass, included every single cadre inmate at the MDC, current and future, full stop. They don't explain at all why they needed a list of cadre names and contact information, which is essentially what their argument boils down to, to certify such a class as they defined it in the operative complaint. Paired with the allegations that were so broad that virtually every aspect of the prison experience is included. Again, the class probably could have been certified. Okay, but we are, and I appreciate the argument. We are where we are. And in other words, Mr. Crespo died. And so we are in a situation where it was not certified. And there are two people who are, well, I guess now they're out of, they're no longer in prison. But there's an intervention motion that was not entertained. I think that that's fair to say. Not considered because Judge Corman determined that the case was moot purely by virtue of Mr. Crespo's death. Correct. That said, the proposed intervener's motion to intervene also fails on the merits. With respect to intervention as of right, they can't first show that they have a direct, substantial, and legally protected interest in the action. They can't now, or they couldn't at the time of the motion? They couldn't then. Mr., the proposed intervener's. Well, Nagy was already out at the time of the motion, I think, right, no? Yes, not only that, they didn't enter the MDC until years after the lawsuit was filed and years after Mr. Crespo was released from the MDC. The conditions that Mr. Nagy and Chen, the proposed intervener's, experienced at the MDC were completely different conditions than the named plaintiff's experience. And the proof of that. Well, has it gotten better? Different better or different worse? Well, Your Honor, proof of the difference, let's use that word, is in the changes that they proposed to make to the operative complaint. They've added events that took place in 2019 and 2020, including an institution-wide power adage that happened in 2019, and how the MDC responded to COVID-19. The MDC that the proposed intervener's were housed in was a completely different MDC than the named plaintiff's. But... So you would also actually prefer, both sides seem to prefer for us to deal with the, well, for us to deal with other things maybe, but to deal with this intervention issue based on the record before us? Defendants haven't taken a position on preference. You know, plaintiffs asked in footnote in their brief that the court do so. And so to the extent that, you know, should the court take it up? We don't believe that, you know, it could mean intervention. That said, I think that the remanding to district court is also prudent, given that the standard for review there is abuse of discretion. If I may, just in terms of Judge Sullivan, your point on the proposed interveners having been released, that goes to factor three under the intervention by Wright analysis. And the question is whether disposing of the case would impair the proposed intervener's interest. And the answer is it doesn't, because they have been released from the MDC. Thank you. Judge Kovades? Yeah, I have a simple question. I take it that if the other side prevails, at least to the extent of our reopening the question of class representation, that is, if we rule in their favor to the extent of a remand to the district court to consider permitting substitution of Crestbone, that would understandably lead to a delay in dealing with the substantive issues here. Is that right? That is correct, Your Honor. Potentially. I don't know to the extent that counsel has proposed interveners that are not Ms. Sewers, Chen, or McGee ready to serve as interveners or substituted plaintiffs, but there would be delay, I think, either way. If they brought a new complaint or if the cases were remanded. Are there any other class actions that involve the MDC besides this one? That is, the class actions that involve conditions at the MDC besides this one? Your Honor, I'm not aware of any currently pending. My understanding is that there have been cases brought with respect to the power outage that I referenced earlier in 2019, and I believe it's been resolved. Thank you. Thank you. We'll hear McDonnell. A few minutes. So I'll just say, both interveners were still incarcerated at the time that the motion intervened was filed. When was the motion intervened filed? I believe it was September 22nd or 21st, 2022. And they were both still incarcerated at the time. But Nega got out the next day, right? Yeah, that's right. It was just under the wire. Just a few points. So defendants are absolutely correct that we were not seeking an exception to mootness and that we do not apply for the capable of repetition yet evading review exception, at least for Crespo's death. We made that completely clear to the district court. What we're asking for is the opportunity to intervene. That's what Klein is about. That is what Swan is about. What we're asking for is significantly narrower than the framework that- So your friend distinguishes Klein and I think actually a couple of other cases. What is your response to that? So nothing in Klein suggests that it should be limited to the Rule 17 substitution context. In Turkman, which this court also discussed, it favorably cited one of the district court cases that we cite in Marine National Australia that suggests a way to avoid the mooting of a class claim is either substitution or intervention. Swan talks about intervention. There's nothing in any of these cases that suggests it's limited to a particular means of substituting a plaintiff. Intervention is a way to get an absent class member in as the named plaintiff. The dissent of Klein is also supportive of our point. The whole, the thrust of the dissent is that the relaxed mootness rules apply to class actions, Rule 23 class actions, not to a derivative claim. So it's on all fours with every aspect of Klein, including the dissent. And the schedule aside, by the time Mr. Crespo died, and not through lack of trying, we had no class discovery. Class discovery was necessary to file a motion for class certification. All we had in terms of discovery was information about the plaintiff's- Why was it necessary? Because of the court's schedule or something else? It's necessary because of the demands of what class certification requires. Well, not all, I mean, there are some classes where you don't need a whole lot of discovery to make a motion for class certification. I'm just trying to figure out, in this case, I mean, there were discussions about this, and the court said, don't think about it until after we finish discovery, or that was just the assumption? There were no discussions with the court about this, but this was based on our evaluation of what were other successful class certification motions in analogous factual context that we were, in analogous factual context. We were challenging a wide variety of constitutional, of unconstitutional conditions in a prison that required us to have a lot of factual information about what these people experienced on a day-to-day. But what the interveners may have experienced just may be very different from what Mr. Crespo experiences, what's laid out in the complaint. But it's consistent with the class definition. The class definition is the people who are subjected to these conditions, and the only thing that has changed. Well, that's everybody who lived in the Condrey unit, right? That's right, but these conditions have persisted, and all that's changed is the passage of time. We alleged in 2017 that there were insufficient medical services, and defendant's point is that time has passed, and COVID and a power outage have exposed them, exposed how much further they've degraded. The core allegations are precisely the same. No, it's just, this discovery seems to me to be pretty easy for class certification. Just give me the list of all the people who lived in the Condrey unit between years X and Y. Well, they didn't give us that. We had to go to court to get it, and they only gave it to us after Mr. Crespo had passed away. We had that precise discovery request in. We had broad discovery requests about grievances that the unnamed class members had submitted that conditions that they lived in, and the repeated objection that defendants gave us, and the BOP gave us that we subpoenaed, and they were, it's understandable because they were backed up by the magistrate court's ruling on this. They wouldn't give us information about unnamed class members, and that was only, we were only negotiating that once we had passed the motion to dismiss Stage. Mr. Kovanes, do you have a question? Yes, going back to the question that was first raised by Judge Lohier when you were up the first time, you would, if you prevail at least to the extent of our reopening the question of class representation as a result of the death of Crespo, I mean, that's a substantial victory, is it not? Would you not find that a satisfactory solution for now? As opposed to, Judge, I'm sorry? Yes, I'll say yes. It was promised by some reorder, yeah. I'm saying that by supposing many things. Yes, we would. Right, so that's some sort of victory on remand. What's your view on that, that is, do you think that we would therefore not be able to address the Bivens matter, or the district court could not, we could not address the Bivens question presumably until that was resolved in the district court, right? I think they're totally separate, and this court is capable of dealing with them independently. The proposed intervener complaint is solely about injunctive release. It has dropped the Bivens claims, which by the time we had filed, or attempted to file the intervener complaint, those had been dismissed from the action. We were intending to proceed purely on the injunctive relief claims. So not on the Bivens, so those would drop out if these interveners were permitted to intervene. Is that what you're saying? I'm not holding you to anything specific. If the sole ruling is that the interveners are permitted to intervene, and the Bivens claims remain dismissed, then yes, that is what would happen. That's not a true question. I'm just trying to frame it correctly. Thank you. Anything else, District Attorney? Thank you very much. Thank you. Thank you very much for your decision. I appreciate the argument.